BINGHAM ET AL. *v.* UNITED STATES.

No. 83. Argued November 22, 1935.—Decided December 9, 1935.

*Mr. George S. Fuller* for petitioners.

*Mr. David E. Hudson,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Messrs. Sewall Key* and *Arnold Raum* were on the brief, for the United States.

214

216

Mr. Justice Sutherland delivered the opinion of the Court.

This case involves the construction and constitutionality, as applied, of § 402 (f) of the Revenue Act of 1918, which provides that the value of the gross estate of the decedent shall be determined by including the value, at the time of his death, of all property "(f) to the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

Petitioners are the executors of the will of King Upton, who died in 1921 while the Act of 1918 was in force. His wife survived him. Long prior to the passage of the Act, a number of life insurance policies were issued to the decedent, among them four issued by the Berkshire Life Insurance Company of Massachusetts, originally payable to his estate; and one issued in 1883 by the Connecticut Mutual Life Insurance Company of Connecticut, payable to the wife of the decedent with a condition that in case of the predecease of the wife the amount of the policy should be payable to his children, or, if there be no children or descendants of children then living, to the legal representatives of the insured. In 1904, decedent assigned the four Berkshire policies to his wife, " provided she survives me." The decedent had no power, none being reserved, to change the beneficiaries, to pledge or assign the policies after the assignment to his wife, or revoke that assignment, or surrender the policies without the consent of the beneficiaries. *Central Bank of Washington* v. *Hume,* 128 U. S. 195, 205; *Miles* v. *Connecticut Life Ins. Co.,* 147 U. S. 177, 181, 182, 183, compare dissent p. 188; *Commonwealth* v. *Whipple,* 181 Mass. 343; 63 N. E. 919; *Pingrey* v. *National Life Insurance Co.,* 144 Mass. 374, 382; 11 N. E. 562.

After having deducted the specific exemption of $40,000, the Commissioner of Internal Revenue included the proceeds of these five policies in the decedent's gross estate, for the purpose of the federal estate tax. An action was brought in a federal district court to recover the amount of the tax resulting from the inclusion of these proceeds. That court rejected the view of the commissioner and awarded judgment to the taxpayers upon the authority of *Lewellyn* v. *Frick,* 268 U. S. 238. 7 F. Supp. 907.

The court of appeals reversed, holding that the *Frick* case was distinguishable. 76 F. (2d) 573. We think the view taken by the district court is the correct one.

1. Eleven policies were involved in the *Frick* case, all antedating the passage of the act. Among them was one issued by the Berkshire company and another issued by the Connecticut Mutual. These policies in terms were identical with the corresponding policies in question here. The assignment of the Berkshire policy there was the same as the assignments here. This court applied the rule that acts of Congress are to be construed, if possible, so as to avoid grave doubts as to their constitutionality; and said that such doubts were avoided by construing the statute as referring only to transactions taking place after it was passed. In that connection we invoked the general principle " that the laws are not to be considered as applying to cases which arose before their passage " when to disregard it would be to impose an unexpected liability that, if known, might have been avoided by those concerned. The court below sought to distinguish the decision on the ground that this court did not refer to those specific provisions set forth in the policies and assignments which are pertinent here. The government makes the same point, and contends that since this court did not allude to these provisions in the opinion, the decision cannot be regarded as having passed on their effect. It is true that questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents. *Webster* v. *Fall,* 266 U. S. 507, 511. That, however, is not the situation in the present case. In *Lewellyn* v. *Frick* the policies and assignments, in their entirety, were definitely before the court; and this necessarily included each of the provisions which they contained. Moreover, both in the appendix to the government's brief and in the main brief of the taxpayers, the attention of the court was distinctly called to all of the provisions which are now invoked. The latter brief summarized and described the provisions of the

four classes of policies which were involved—one class being policies, it was pointed out, made payable to the Frick estate "subsequently assigned by Mr. Frick to his wife or daughter if she survived him, without reserving power to revoke the assignments." This court, without stopping to recite the various specific provisions that were thus clearly brought to its attention, held that the proceeds of none of the policies were subject to the estate tax under § 402 (f). It fairly must be concluded that in reaching that result these provisions were considered, and that such of them as bore upon the problem, there as well as here presented, were found not to require a different determination. We think the points now urged by the government were decided in the *Frick* case, and find no reason to reconsider them.

2. The principles so recently announced by this court in *Helvering* v. *St. Louis Union Trust Co.*, *ante*, p. 39, and *Becker* v. *St. Louis Union Trust Co.*, *ante*, p. 48, are decisive of the case in favor of the taxpayers. Those principles establish that the title and possession of the beneficiary were fixed by the terms of the policies and assignments thereof, beyond the power of the insured to affect, many years before the act here in question was passed. No interest passed to the beneficiary as the result of the death of the insured. His death merely put an end to the possibility that the predecease of his wife would give a different direction to the payment of the policies.

*Judgment reversed.*

MR. JUSTICE BRANDEIS, MR. JUSTICE STONE, and MR. JUSTICE CARDOZO concur on the first ground stated in this opinion.

The CHIEF JUSTICE concurs in this opinion, acquiescing in the second ground because of the recent decisions in the cases there mentioned.